AUSA Faris J. Hussein (312) 353-4156

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

GANIYU AMOSU

**FILED**
JAN 17 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

CASE NUMBER: 08CR 0039

MAGISTRATE JUDGE MASON

I, Jeffrey S. Thiers, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __January 16, 2008__ in __Cook__ County, in the __Northern__ District of __Illinois__ defendant GANIYU AMOSU did knowingly and intentionally possess with intent to distribute, four kilograms or more of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title __21__ United States Code, Section(s) __841(a)(1)__.

I further state that I am a(n) Special Agent with the Department of Homeland Security and that this complaint is based on the following facts:
<sub>Official Title</sub>

See attached affidavit

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

January 17, 2008
Date

at Chicago, Illinois
City and State

Michael T. Mason, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | |
| | ) | SS |
| COUNTY OF COOK | ) | |

## AFFIDAVIT

I, Jeffrey S. Thiers, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), formerly known as the U.S. Customs Service, and have been so employed since September 2001. My primary duties consist of investigating criminal violations of the federal controlled substance laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, and 846. I am an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7) -- that is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am currently assigned to the office of the Resident Agent in Charge ("RAC"), Chicago O'Hare International Airport. During my employment, I have received specialized training and have experience in investigating violations of the immigration, import and export laws of the United States, including violations involving the illegal importation of narcotics. Specifically, I have received training in the smuggling of narcotics across the United States' borders and the methods used to traffic narcotics into the United States.

3. This affidavit is submitted for the limited purpose of establishing probable cause in support of the attached criminal complaint. I learned the facts set forth herein from my

own personal knowledge or information provided to me by other ICE agents and other law enforcement officials. It contains only a summary of the facts and is not intended to be a detailed account of everything known about the individuals and events described herein.

### January 12, 2008: Amosu Arrives in Chicago

4. On January 12, 2008, Ganiyu Aremu AMOSU, a citizen and resident of the United Kingdom, arrived at Chicago O'Hare International Airport on a United Airlines flight #949 from London, England. Shortly after arrival, AMOSU, pursuant to routine practices of Customs and Border Protection ("CBP") Officers, was referred for a secondary examination.

### Amosu's Statements During the Secondary Examination

5. During the secondary examination, it was determined that AMOSU's Customs Declaration form listed the address 1215 W. 95th Place, Chicago, Illinois 60643 as his intended place of stay while in the U.S. AMOSU arrived from London with only one piece of luggage, a black carry-on roller suitcase with a label reading "Metropolis" on the zipper ("Metropolis carry-on"). AMOSU claimed to be a former taxi driver who is currently employed as a security officer. He also claimed that, in the past, he bought and sold cars.

6. AMOSU stated that he had made two prior trips to the Chicago-area during the past four months to buy cars and export them to Nigeria. The first of these trips was in September 2007, at which time he declared he was transporting approximately $96,000 USD. The second trip was in December 2007, at which time he declared he was transporting approximately $51,000 USD. AMOSU claimed that the purpose of the

current trip was to meet with an individual named "YaYa" who was to assist AMOSU in locating the vehicles that AMOSU allegedly purchased and arranged to be shipped to Nigeria during his December 2007 visit to Chicago. According to AMOSU, the vehicles have yet to arrive in Nigeria. AMOSU could not produce any documents or records to prove that any vehicles had been exported by him nor could he answer any questions about whom or where he purchased the cars from during his previous visit. AMOSU was vague about the actual itinerary of his visit and could not explain exactly where he was going and who he was planning to meet in the Chicago-area.

7. ICE records revealed that an individual named John ORE had also used 1215 W. 95th Place, Chicago, Illinois 60643 as his intended place of stay during his visit to the U.S. from the United Kingdom in November 2007. AMOSU was asked if he knew John ORE, to which he replied "no."

8. AMOSU's Metropolis carry-on bag was examined, the results of which were negative. AMOSU was released from the secondary examination area.

### January 16, 2008: Amosu Departs Chicago

#### Identifying Amosu's Luggage

9. On January 16, 2008, CBP officers reviewing outbound international flights at O'Hare encountered and questioned AMOSU for examination based, in part, on the inconsistent information given by AMOSU during his secondary examination on January 12, 2008. Specifically, at approximately 8 a.m., CBP agents reviewed airline records to determine whether AMOSU had checked-in any luggage when he checked-in for his outbound flight for London. The search identified two large, black Samsonite suitcases ("Samsonite suitcases") that were checked-in by AMOSU when he checked-in for his

flight. At the time AMOSU checked-in for his flight, airline employees placed bag tags numbered AA403229 and AA403230 on AMOSU's Samsonite suitcases. Each of the bag tags contained the name "AMOSU/GANIYU."

### Search of Amosu's Suitcases

10. Examination of Amosu's Samsonite suitcases revealed clothing, including pants, shirts, shoes, undergarment, and two clear plastic bags, one in each suitcase, each containing a yellowish powdery substance. The majority of the clothing, including the pants, shirts, and shoes appeared to be newly purchased and contained the original store tags. The two clear plastic bags were found secreted within the interior lining of each of the Samsonite suitcases. A field test of the yellowish powdery substance was conducted which yielded a positive result for the properties of cocaine. A total of approximately 9.35 pounds of cocaine was discovered in the suitcases checked in by AMOSU.

### January 16, 2008: Amosu's Statements to CBP

11. Upon the discovery of the cocaine, AMOSU was advised of and waived his Miranda Rights. AMOSU then stated that upon exiting O'Hare International Airport on January 12, 2008, he called "Shegun," a/k/a John ORE, who instructed AMOSU to proceed to the hotel where ORE was staying. In direct contradiction to his statement to CBP agents on January 12, 2008, AMOSU stated that he has known John ORE for approximately 10 years and that he knows ORE's family. AMOSU stated that he took a taxi to the Days Inn Hotel located at 6450 West Touhy Avenue, Niles, Illinois 60714. When AMOSU arrived, ORE paid for his taxi and accompanied him to room 517 where ORE was staying. AMOSU stated that during the course of his stay with ORE, he and

ORE went shopping at Target and purchased many articles of clothing -- the same articles that were found in AMOSU's Samsonite suitcases, along with the cocaine.

12. According to AMOSU, on the morning of January 16, 2008, he and ORE departed the Days Inn Hotel and proceeded in a taxi cab to O'Hare Airport. Once there, AMOSU checked-in for his rescheduled flight to London, American Airlines flight #90. AMOSU had three pieces of luggage with him when he checked-in for his flight: the Metropolis carry-on he brought from London and the two Samsonite suitcases. AMOSU took the carry-on with him as a carry-on luggage but had the Samsonite suitcases checked-in.

13. Based upon the facts set forth in this affidavit, I believe there is probable cause to believe that Ganiyu AMOSU did knowingly possess with the intent to distribute approximately 9.35 pounds, or 4.249 kilograms, of cocaine.

**FURTHER AFFIANT SAYETH NOT**

Jeffrey S. Thiers
Special Agent
U.S. Immigration and Customs Enforcement

Subscribed and sworn
Before me this

Magistrate Judge